MIGUEL CARLO AYMAT, Plaintiff and Appellee, v. JUANA VARGAS, ETC., Defendant and Appellant.

No. 9323. Argued June 12, 1946.—Decided July 12, 1946.

*Enrique Báez García* for appellant. *J. Alemañy Sosa* for appellee.

Mr. Justice Córdova delivered the opinion of the court.

The appellant, who had leased a farm to Julio N. Matos, entered into a contract with him extending the lease for a term of seventeen years, in which the parties mutually agreed to purchase and sell the property for $4,500, in the following terms:

### "Promise of Sale

"Tenth: The parties agree in that at any time during the term of this contract of lease, Don Julio N. Matos Agrait shall be bound to purchase from Doña Margarita Vicéns *or her successors,* and Doña Margarita Vicéns *or her successors* to sell to Don Julio N. Matos Agrait, the above-described property for the sum of four thousand dollars, and the sum of five hundred dollars is fixed as penalty for breach of this clause by any of the parties, which shall be paid to the injured party as damages." (Italics ours.)

Five years afterwards Matos transferred all his rights in the contract to the appellee, who unsuccessfully required the appellant to comply with the promise of sale, and then brought this action to obtain the specific performance of the contract of sale. The lower court gave judgment for the plaintiff and the defendant has appealed, assigning two errors: that of considering that Matos's assignee acquired the right to demand the specific performance of the promise of sale, and that

of not deciding that the obligation of the appellant towards Matos or his assignee was limited to the payment of $500 as compensation for the nonperformance of the promise of sale.

The first error assigned actually raises only one question, although in appellant's well-reasoned brief the question is considered from various aspects. The question is whether Matos's right to buy the property was purely personal, or whether, on the contrary, it was assignable to the appellee.

 Every right may be assigned, in the absence of a stipulation to the contrary, except those which by their nature or by express disposition of law are not transferable.[1] The right which Matos acquired by virtue of the mutual promise of purchase and sale, is not unassingnable either by its nature or by provision of law. Its assignment to the appellee is, therefore, binding and effective, in the absence of an agreement contrary to that assignment.

The theory of appellant is that there is an agreement to the contrary, that is, that the terms of the mutual promise of purchase and sale show that it was the intention of the parties that Matos's right be nontransferable. The appellant bases her contention on the fact that the promise binds her *and her successors,* while there is no express mention of the successors of Matos.[2] Indeed, it is not easy to understand why express mention was made of the rights and obligations of the appellant's successors, and nothing was said of the rights and obligations of Matos's successors. As to this point, both parties introduced evidence. Matos, the appellant, and the notary testified, and the court gave credit to the testimony

---

[1] Section 1065 of the Civil Code (1930 ed.) provides: "All the rights acquired by virtue of an obligation are transmissible subject to law, should there be no stipulation to the contrary."

[2] The appellant does not contend that the word "successors" includes assignees. She admits that it refers to the heirs, and argues that, since no reference was made to the heirs of Matos, these would not be benefited nor bound by the contract of purchase and sale, and that if that was the intention of the parties as to Matos's heirs, it was *a fortiori,* as to his assignees.

of Matos and of the notary, to the effect that the notary acted under Matos's instructions and that those instructions did not involve any distinction regarding the extent of the obligation to purchase and sell that both parties were assuming, and that the dissimilarity in the phraseology used regarding the one and the other party was due to an oversight of the notary. The appellant, on the other hand, did not testify that she had insisted upon conditioning or limiting the rights of Matos or to prohibit their transfer, but at first she denied that she had bound herself to sell to Matos and then explained that when the deed was read to her she objected because she had not agreed to sell and that she signed the deed after Matos told her: "It does not matter, since you are not going to sell to any body but me," thinking "that now or in the future if I should decide to sell, I would sell only to him." As may be seen, the appellant, instead of maintaining that it was her intention to sell to Matos and to prohibit the transfer of Matos's rights decided to challenge the promise to sell, testifying that "I always told him that if I sold I would prefer to sell to him instead of anybody else, but that I did not want to sell because I would close my son's property," which theory, as counsel for the appellee objected at the time, is different from the issue raised by appellant in her answer [3] and now in her appeal. In view of this evidence, we can not say that the lower court erred in giving credit to the testimony of Matos and the notary, nor can we hold, on the contract and the evidence, that it was the intention of the parties to prohibit the assignment of Matos's rights.

Appellee therefore acquired Matos's rights in the contract, including the right to buy the property at the agreed price. The acquisition of those rights by the appellee did not mean, as suggested by appellant, that the obligations

---

[3] Appellant's answer sets up that she was bound to sell to Matos and alleges that it was expressly agreed that Matos's right would be personal, and would not pass on to his successors.

which Matos assumed towards the appellant were extinguished. The transfer of a right by a party to a contract does not discharge him from any obligation towards the other party, unless the latter consents to his discharge.[4] The transfer of the rights of Matos to the appellee, therefore, did not in any way prejudice the appellant, who could always demand from Matos the performance of his promise to pay $4,500 for the property. And when the appellee offered, as Matos's assignee, to pay the agreed price and deposited it in court, Matos's obligation was fully performed.

The appellant contends that the appellee, as assignee of Matos's rights, is not entitled to the specific performance of the promise to sell, since § 1340 of the Civil Code (1930 ed.) provides that the promise to purchase or sell ". . . gives a right to the contracting parties to mutually demand the fulfilment of the contract," and therefore impliedly excludes any other person who is not a party to the contract of purchase and sale. In addition, the appellant invokes § 1044 of the Civil Code which provides that "obligations arising from contracts have legal force between the contracting parties. . .," and § 1209, which sets forth that "contracts shall only be valid between the parties who execute them and their heirs, . . ." But the Sections cited, as many others which deal with the rights and remedies of the contracting parties, and of creditors, can not be read without having in mind the general principle, established in § 1065, *supra,* that all rights arising from contracts are transferable. If Matos, as a party to the contract, had the right, under § 1340, to the specific performance of the promise to sell, that right was transferable under § 1065, since there was no stipulation to the contrary. It was transferred to the appellee when Matos as-

---

[4] See § 1065 of the Civil Code, *supra,* which deals with the assignment of *rights,* and § 1159, which provides that "Novation, consisting in the subtitution of a debtor in the place of the original one, may be made without the knowledge of the latter, but not without the consent of the creditor."

signed to him all his rights in the contract executed with the appellant. The appellee is entitled, therefore, to specific performance of the promise to sell.

But the appellant, in her second assignment of error, contends that Matos was not entitled to demand the performance of the promise to sell, his right being limited, in case of the nonperformance of the promise, to receive $500 as damages for nonperformance, since it was so agreed by the parties.

The question raised by the appellant is expressly considered in §§ 1106 and 1107 of the Civil Code (1930 ed.), which provide as follows:

"Section 1106.—In obligations with a penal clause the penalty shall substitute indemnity for damages and the payment of interest in case of nonfulfilment, should there be no agreement to the contrary.

"This penalty can only be enforced when it is demandable in accordance with the provisions of this Code."

"Section 1107.—The debtor can not exempt himself from the fulfilment of the obligation by paying the penalty, unless such right has been expressly reserved to him. Neither may the creditor exact the fulfilment of the obligation and also the payment of the penalty, unless such right has been clearly granted him."

As we decided in *Pueyo* v. *Real Hermanos,* 18 P.R.R. 831, a party to a contract can insist on its performance even if there is a penal clause, under § 1107, unless the contract expressly reserves to the other party the election between performing the obligation and paying the penalty.[5] In the case at bar there was no such reservation, either express or implied, and hence Matos and his assignee were entitled to choose between exacting the performance of the contract or the payment of the penalty. Matos's assignee decided to demand the performance of the contract and the lower court did not err in recognizing his right to so elect.

The judgment appealed from should be affirmed.

[5] See 8 Manresa 226, 227; 19 Scaevola 836, 837; 2 Restatement of the Law of Contracts, American Law Institute, pp. 700, 701.